IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| DARRYL L. MCKIBBENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO.  3:17-cv-01110 |
| | ) | |
| METROPOLITIAN GOVERNMENT OF | ) | JUDGE RICHARDSON |
| NASHVILLE AND DAVIDSON | ) | |
| COUNTY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Darryl McKibbens filed this action against his employer, Metropolitan
Government of Nashville and Davidson County, alleging discrimination based on his race, as well
as retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the
Tennessee Human Rights Act ("THRA"). 42 U.S.C. § 2000e *et seq.*; T.C.A. § 4-21-101. Before
the Court is Plaintiff's Motion for Summary Judgment (Doc. No. 22), supported by an
accompanying brief (Doc. No. 24). Plaintiff filed a response (Doc. No. 29), and Defendant replied
(Doc. No. 35). For the below stated reasons, Defendant's motion will be granted in part and denied
in part.

## FACTUAL BACKGROUND[1]

In 1986, Plaintiff began working for Defendant at Metro Water Services as a Maintenance
& Repair Worker 1. (Doc. No. 29-1 ¶ 2). In 1997, he was promoted to Maintenance and Repair

---

[1] The following facts, unless somehow qualified herein, are taken as true for purposes of this motion, because they are
either: (1) asserted and evidentially supported by one party and not rebutted by the other side; (2) otherwise not in
genuine dispute; (3) asserted and evidentially supported by the non-movant and thus credited by this Court even if
disputed by the movant; or (4) subject to judicial notice.

Leader 1. (*Id.* ¶ 2). Over the next twenty years, Plaintiff occasionally worked out-of-class[2] as a Maintenance and Repair Leader 2, but did not receive a formal promotion to this position until May 2016. (*Id.* ¶¶ 4-7). During this same time, Plaintiff requested the opportunity to work out-of-class as a Water Maintenance Supervisor, which was a higher position than Maintenance Repair Leader 2, but did not receive any of the requested out-of-class supervisor work. (*Id.* ¶¶ 5, 6, 9).

In 2015, Plaintiff's supervisor, Charlie Clark, placed three employees (Ashley McKinnon, Ray Tate, and Kevin Cobb) in out-of-class Water Maintenance Supervisor positions. (Doc. No. 23-2 at 34:8-15, 44:14-23).[3] Mr. Clark never placed Plaintiff in an out-of-class Water Maintenance Supervisor role, although Plaintiff was qualified for the position. (Doc. No. 29-1 ¶¶ 5, 6, 9). According to Mr. Clark, the employees he placed out-of-class as Water Maintenance Supervisors had all "come up through the trenches," while Plaintiff had not. (Doc. No. 23-2 at 38:14-19). Additionally, Mr. McKinnon, Mr. Tate, and Mr. Cobb all worked in the Repair and Maintenance division, while Plaintiff worked in the Water Maintenance division. (*Id.* at 34:8-23; 37:13-22). Mr. Clark offered Plaintiff the opportunity to work for the Repair and Maintenance division and "bring his boots" and "start from the bottom like the rest of these guys," but Plaintiff declined. (*Id.* at 38:9-19).

In the fall of 2015, Defendant announced it was seeking candidates with at least "five years of experience in construction repair and maintenance work" to fill open Water Maintenance Supervisor positions. (Doc. No. 22-3 at 10). Defendant applied for the position. (Doc. No. 29-1 ¶

---

[2] Although "out-of-class" is not defined by either party, it appears to be a practice by which Defendant assigns employees to perform a higher ranking job without a formal promotion. It also appears that working out-of-class is beneficial for Defendant's employees, as Plaintiff's discrimination and retaliation claim are based in part on the theory that others with less experience were allowed to work in out-of-class positions over Plaintiff. (Doc. No. 1 ¶¶ 16-19; Doc. No. 29-1 ¶ 16).

[3] Mr. McKinnon and Mr. Tate are African American. (Doc. No. 23-2 at 52:20-22). Mr. Cobb is Caucasian. (*Id.* at 52:24).

5). Defendant's Main Human Resources Department, which is the Human Resources Department for all Metro agencies, scored and ranked each candidate. (*Id.* ¶ 5; Doc. No. 22-3 at 10-13; Doc. No. 23-2 at 12:22-13:11). In January 2016, Plaintiff discovered he ranked eighth. (*Id.* ¶ 15). Each candidate that ranked above Plaintiff either received a promotion to Water Maintenance Supervisor or voluntarily withdrew from consideration for the position. (*Id.* ¶ 18). Three of the six employees Defendant promoted to Water Maintenance Supervisor were African American. (Doc. No. 22-3 at 147-48, 151-52; Doc. No. 23-2 at 52:20-24). Mr. Cobb and Mr. Tate were among the six employees that received the promotion. (Doc. No. 22-3 at 147-48, 151-52). Although they had less seniority than Plaintiff, their experience working out-of-class as Water Maintenance Supervisors enabled them to receive a higher ranking than Plaintiff. (Doc. No. 22-4 at 79:1-5, 80:2-14, Doc. No. 29-1 ¶ 16). Defendant informed Plaintiff he was "next-in-line," but no other Water Maintenance Supervisor positions were available at that time. (Doc. No. 22-4 at 46:17-24). However, an open Water Maintenance Supervisor position on third shift was being filled by a Caucasian co-worker who was allowed to work out-of-class in this role. (Doc. No. 29-1 ¶ 10; Doc. No. 22-4 at 46:17-24).

Also in 2015, Defendant announced its intention to create a new 10:00 a.m. to 8:00 p.m. shift. (Doc. No. 29-1 ¶ 11). The purpose of the new shift was to assist in covering calls to minimize response time during the end of second shift and the beginning of third shift. (Doc. No. 23 at 44:12-21). Plaintiff expressed his desire to work the new shift in an out-of-class supervisor role; however, Defendant informed Plaintiff he would work as a laborer, not a supervisor, if he chose to work the new shift. (Doc. No. 29-1 ¶ 11). Nevertheless, Defendant decided to not implement the new shift and instead required second shift to stay longer to cover calls. (Doc. No. 23 at 46:8-10, 68:23, 71:14-16).

In May 2016, Defendant promoted Plaintiff to Maintenance and Repair Leader 2, nine months after Plaintiff applied for a promotion to that position. (Doc. No. 29-1 ¶ 4). At the same time, Jamie Frydenlund, a Caucasion co-worker, received a promotion to Maintenance and Repair Leader 2. (*Id*. ¶ 23). Mr. Frydenlund was less qualified than Plaintiff, and ranked below Plaintiff in the competitive process for a promotion. (*Id*. ¶ 22, 23). After his promotion, Plaintiff continued to request out-of-class work as a Water Maintenance Supervisor, but did not receive any out-of-class supervisor assignments. (*Id*. ¶ 9). Mr. Frydenlund, however, was often called to work out-of-class in a supervisory role during third shift. (*Id*. ¶ 25). Mr. Frydenlund worked third shift from "the start of his hiring," and worked exclusively with the Construction and Repair division under a different supervisor than that of Plaintiff. (Doc. No. 23-2 at 45:5-24; Doc. No. 23 at 77:6-11). The experience Mr. Frydenlund gained working as an out-of-class Water Maintenance Supervisor on third shift improved his chances for a formal promotion to Water Maintenance Supervisor in the future. (Doc. No. 29-1 ¶ 20).

Defendant continued to allow other employees who were promoted to Maintenance and Repair Leader 2 to work as out-of-class Water Maintenance Supervisors.[4] (Doc. No. 29-1 ¶ 26). Plaintiff did not receive the opportunity to work out-of-class as a Water Maintenance Supervisor at any time prior to initiating this lawsuit. (*Id*. ¶ 20, 25; Doc. No. 23 at 79:1-5, 80:2-14). Defendant informed supervisors to "work Plaintiff as a laborer" to make "life more difficult for him." (Doc. No. 29-1 ¶ 6).

On February 24, 2018, during the pendency of this lawsuit, Defendant promoted Plaintiff to Water Maintenance Supervisor. (Doc. No. 22-1 at 30:12-15). Mr. Frydenlund received a promotion to the Water Maintenance Supervisor position at the same time. (Doc. No. 23-6 at 1).

---

[4] Specifically Mike Trimble, Robert Hogg, Branden Bryant, and David Phillips. (Doc. No. 29-1 ¶ 26). Mr. Bryant and Mr. Phillips are Caucasian. (Doc. No. 23-2 at 53:3-5). Mr. Hogg and Mr. Trimble are African American. (*Id*.).

On December 4, 2015 (prior to some of the events discussed above), Plaintiff filed a Charge of Discrimination. (Doc. No. 1 ¶ 12). After receiving his Right to Sue letter dated May 5, 2017, Plaintiff filed this Complaint on August 2, 2017. (*See* Doc. No. 1).  In his Complaint, Plaintiff alleges Defendant racially discriminated and retaliated against him through the following actions: (1) delaying Plaintiff's promotion to a Water Maintenance Leader 2 position; (2) refusing to place Plaintiff in out-of-class supervisor roles and informing a supervisor to work Plaintiff as a laborer; (3) refusing to implement a new shift that Plaintiff expressed interested in working; and (4) delaying Plaintiff's promotion to a Water Maintenance Supervisor position. (Doc. No. 1 ¶¶ 15-25).

This is Plaintiff's second lawsuit against Defendant. On November 20, 2003, Plaintiff filed a Charge of Discrimination, alleging racial discrimination both individually and on a class-wide basis. (Doc. No. 23-8 at 2). After receiving his Right to Sue letter, Plaintiff filed suit in the United States District Court for the Middle District of Tennessee, along with eight other African American employees. *See generally Grant, et al. v. Metro. Govt. of Nashville and Davidson Cty, Tennessee*, No. 3:04-cv-00630 (M.D. Tenn.) (hereinafter "*Grant* I"). On August 8, 2005, the court certified *Grant* I as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2). The class consisted of all former, current and future African American employees who worked at Metro Water Services from January 1, 2000, to the present. *See Grant* I, Order Certifying Class at 1 (Aug. 8, 2005). Plaintiff was named a class representative. *See Grant* I, Memo. at 36-37 (Aug. 8, 2005). After an extensive procedural history, the parties reached a settlement and the court dismissed the case on March 27, 2018. *Grant* I, Order of Dismissal (Mar. 27, 2018).

**LEGAL STANDARD**

Summary judgment is appropriate where there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). In other words, even if genuine, a factual dispute that is irrelevant or unnecessary under applicable law is of no value in defeating a motion for summary judgment. *See id.* at 248. On the other hand, "summary judgment will not lie if the dispute about a material fact is 'genuine[.]'" *Id.*

A fact is "material" within the meaning of Rule 56(c) "if its proof or disproof might affect the outcome of the suit under the governing substantive law." *Reeves v. Swift Trans. Co.,* 446 F.3d 637, 640 (6th Cir. 2006). A genuine dispute of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Harris v. Klare*, 902 F.3d 630, 634-35 (6th Cir. 2018).

The party bringing the summary judgment motion has the initial burden of identifying portions of the record—including, *inter alia*, depositions, documents, affidavits, or declarations—that it believes demonstrate the absence of a genuine dispute over material facts. *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 627-28 (6th Cir. 2018); Fed. R. Civ. P. 56(c)(1)(A). The non-moving party must set forth specific facts showing that there is a genuine issue for trial. *Pittman*, 901 F.3d at 628.

The court should view the facts and draw all reasonable inferences in favor of the non-moving party. *Id.* Credibility judgments and weighing of evidence are improper. *Hostettler v. Coll.*

*of Wooster*, 895 F.3d 844, 852 (6th Cir. 2018). As noted above, where there is a genuine dispute as to any material fact, summary judgment is not appropriate. *Id*. The court determines whether sufficient evidence has been presented to make the issue of fact a proper jury question. *Id*. The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient to survive summary judgment; rather, there must be evidence upon which the jury could reasonably find for the nonmoving party. *Rodgers v. Banks*, 344 F.3d 587, 595 (6th Cir. 2003).

## ANALYSIS

Plaintiff alleges discrimination based on his race, as well as retaliation, in violation of Title VII and THRA. The Court discusses each claim in turn.

## I.    DISCRIMINATION IN VIOLATION OF TITLE VII

Title VII provides that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). When a plaintiff produces circumstantial evidence of racial discrimination, as Plaintiff has done here, a plaintiff may establish a circumstantial *prima facie* case by raising an inference of discrimination pursuant to the burden-shifting contemplated by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).[5] *Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). Under that framework, a plaintiff must first establish a *prima facie* case of racial discrimination. *Laster v. City of Kalamazoo*, 746 F.3d 714, 727 (6th Cir. 2014) (citing *McDonnell Douglas Corp.*, 411 U.S. at 802). To do so at the summary judgment

---

[5] Plaintiff's only proffered evidence of direct discrimination is when a Caucasian co-worker called him an "animal." (Doc. No. 29-1 ¶ 27). Whether Plaintiff informed Defendant of this conduct is a disputed fact. (*See* Doc. No. 23-7 ¶ 4). Nevertheless, the Sixth Circuit has held that "comments made by individuals who are not involved in the decision-making process regarding the plaintiff's [adverse employment action] do not constitute direct evidence of discrimination." *Carter v. Univ. of Toledo*, 349 F.3d 269, 273 (6th Cir. 2003).

stage, a plaintiff must produce evidence that could lead a reasonable fact finder to believe that that: (1) he is a member of a protected group; (2) he was subjected to an adverse employment action; (3) he was qualified for the position; and (4) similarly-situated non-protected employees were treated more favorably. *Id.* (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 567 (6th Cir. 2001), and *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)).

If and when the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to present a legitimate non-discriminatory reason for the adverse employment action. *Martin v. Toledo Cardiology Consultants, Inc.*, 548 F.3d 405, 410 (6th Cir. 2008). Upon the defendant's offer of such a reason, the burden shifts back to the plaintiff who must introduce evidence showing the proffered reason is pretext for discrimination. *Id.* at 411-12.

To demonstrate pretext at the summary judgment stage, a plaintiff can meet his or her burden by offering evidence that could lead a reasonable fact finder to conclude that the offered legitimate non-discriminatory reason: (1) has no basis in fact; (2) did not actually motivate the defendant's challenged conduct; or (3) was insufficient to warrant the challenged conduct. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 779 (6th Cir. 2016). Beyond this showing, the plaintiff "must also produce sufficient evidence from which the fact finder could reasonably infer that the asserted unlawful discrimination [ ] was the real reason [for the adverse employment action]." *Bailey v. Oakwood Healthcare, Inc.*, 732 F. App'x 360, 362 (6th Cir. 2018) (*Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012)). *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ("[A] reason cannot . . . be a pretext for discrimination unless it is shown *both* that the reason was false, and *that discrimination was the real reason*.") (emphasis added).

A.  PLAINTIFF FAILS TO MAKE A *PRIMA FACIE* CASE

Defendant argues Plaintiff's racial discrimination claim should be dismissed because Plaintiff has failed to meet his summary judgment burden by presenting sufficient evidence to establish a *prima facie* claim of discrimination. Specifically, Defendant moves for summary judgment on the fourth element of Plaintiff's racial discrimination claim. The Court will examine each of Plaintiff's discrimination theories in turn.

1.  The Water Maintenance Leader 2 and Water Maintenance Supervisor Promotions

In August 2015, Defendant announced openings for Water Maintenance Leader 2 positions. (Doc. No. 29-1 ¶ 4). Plaintiff was qualified for and worked out-of-class in this position for years. (Id. ¶ 4, 5). Plaintiff applied for the promotion in August 2015, but Plaintiff was not formally promoted to this position until May 2016. (Id. ¶ 5). He contends the delay in his formal promotion amounts to racial discrimination in violation of Title VII. (Doc. No. 1 ¶ 17). Also in the fall of 2015, Plaintiff applied for a promotion to Water Maintenance Supervisor. (Doc. No. 29-1 ¶ 5). Main Human Resources Department scored and ranked all of the candidates. (*Id*.). Each candidate that ranked above Plaintiff either withdrew from consideration or received the promotion. (*Id*. ¶ 18).  Plaintiff was eventually promoted to this position in February 2018. (Doc. No. 22-1 at 30:12-15). Nevertheless, he claims Defendant's failure to promote him in 2015 amounted to racial discrimination. (Doc. No. 1 ¶¶ 22-25).

These claims involve allegations of failure to promote. To establish a claim based on failure to promote, Plaintiff must show: (1) he was a member of a protected class; (2) he applied and was qualified for a promotion; (3) he was considered for and denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time Plaintiff's request for the promotion was denied. *White v. Columbus Metro. Hous. Auth.*,

429 F.3d 232, 240 (6th Cir. 2005); *Nguyen v. City of Cleveland*, 229 F.3d 559, 562–63 (6th Cir. 2000).

Defendant argues that Plaintiff's claim regarding the Water Maintenance Leader 2 promotion fails because he has not proffered any individual of similar qualifications who was promoted at the same time his request for the promotion was denied. (Doc. No. 24 at 2-3). The Court agrees, as it is undisputed that all employees promoted to Water Maintenance Leader 2 during the same time frame as Plaintiff (eight African Americans, including Plaintiff, and six Caucasians) were promoted on the same day, regardless of race, when Defendant removed a hiring freeze. (Doc. No. 22-3, 138-41; Doc. No. 23 at 30:11-15). The existence of an individual, from a non-protected class and of similar qualifications, that received the promotion instead of Plaintiff is a necessary element of Plaintiff's failure to promote claim. *See Nguyen,* 229 F.3d at 562–63. Therefore, Plaintiff's delayed promotion to Water Maintenance Leader 2 does not create a *prima facie* case of discrimination, as Plaintiff has not identified any evidence to support the fourth element of his claim.

Further, Plaintiff has not proffered evidence that could lead a reasonable juror to conclude that those promoted to the Water Maintenance Supervisor position were similarly qualified to Plaintiff. Of the five employees that were promoted to Water Maintenance Supervisor, Plaintiff specifically mentions only two anywhere in his response, statement of facts, or pleadings: Ray Tate and Kevin Cobb. Mr. Tate is African American, and therefore a member of Plaintiff's protected class and not an adequate comparator for purposes of Plaintiff's racial discrimination claim.

The only evidence Plaintiff offers regarding Mr. Cobb's qualifications is that he had less seniority than Plaintiff. (Doc. No. 29 ¶ 16). "Where a plaintiff 'introduce[s] only the years of

seniority' and little else, [he] has 'c[o]me up short' with respect to [his] obligations at the fourth [element]." *Wilson v. Cleveland Clinic Found.*, 579 F. App'x 392, 397 (6th Cir. 2014) (quoting *Culver v. CCL Label, Inc.*, 445 F. App'x 625, 629 (6th Cir. 2012)). Thus, this evidence alone is insufficient to show Plaintiff and Mr. Cobb were similarly qualified individuals. Accordingly, Plaintiff has not presented sufficient evidence of Mr. Cobb's experience to permit a threshold weighing of his qualifications against Plaintiff's. *See Id.* Therefore, Plaintiff has not met his summary judgment burden as to the fourth element of his failure to promote to Water Maintenance Supervisor claim.

In sum, because a reasonable jury could not conclude on the current record that Plaintiff offered sufficient evidence as to the fourth element of his failure to promote claims, the delay in these promotions cannot be used to support Plaintiff's *prima facie* case of race discrimination.

### 2. The 10:00 a.m. to 8:00 p.m. Shift

Plaintiff alleges Defendant's decision to not implement the new shift was the result of racial discrimination because "Plaintiff was the only person expressing interest in working the new shift." (Doc. No. 29 at 6; Doc. No. 29-1 ¶ 12). Defendant argues that this claim does not support a *prima facie* case of racial discrimination because the decision to not implement the new shift affected all employees, regardless of race, equally. The Court agrees, as this fact undercuts Plaintiff's claim that Plaintiff suffered discrimination based on his race when the employment decision applied to all employees, not just Plaintiff. As Plaintiff has not demonstrated how any employee was treated more favorably than he was in regards to the decision to not implement the new shift, he has not produced evidence of the fourth element of his claim.[6] Thus, this decision

---

[6] Further, the Court will disregard Plaintiff's assertion in his declaration that Defendant decided to not implement the new shift because Plaintiff "was the only person interested." (Doc. No. 29-1 ¶ 12). As far as the Court can tell, Plaintiff here implies not that Defendant had a legitimate reason for not implementing the shift (*i.e.*, lack of sufficient interested employees to staff the shift), but rather that Defendant's motive was illegitimate, (*i.e.*, to spite Defendant in particular

does not support a *prima facie* case. *See Hollowell v. Michigan Consol. Gas Co.*, 50 F. Supp. 2d 695, 704 (E.D. Mich. 1999) (rejecting the plaintiff's Title VII racial discrimination claim where an employment decision that led to a reduction in the plaintiff's salary applied to all employees regardless of race).

### 3. Out-Of-Class Supervisor Work

In late 2015, Plaintiff's supervisor, Mr. Clark, chose three employees to work out-of-class in a supervisor role. (Doc. No. 23-2 at 34:8-15, 44:14-23). After Plaintiff's May 2016 promotion to Water Maintenance Leader 2, five other employees that received the same promotion were chosen to work out-of-class as Water Maintenance Supervisors. (Doc. No. 29-1 ¶¶ 25, 26). Despite Plaintiff's numerous requests to do so, he was not chosen to work out-of-class as a Water Maintenance Supervisor. Further, Plaintiff contends supervisors were told to "work Plaintiff as a laborer" to make "life more difficult for him." (Doc. No. 29-1 ¶ 11). Plaintiff contends that these actions amount to racial discrimination in violation of Title VII. (Doc. No. 1 ¶¶ 27, 29-30). Defendant argues that Plaintiff has not proffered evidence to meet his burden that his comparators are similarly-situated to him.

---

since he uniquely was interested in the position). Defendant argues in his response to Plaintiff's statement of additional facts (Doc. No. 31) that this assertion should not be considered for purposes of summary judgment, and Plaintiff has not responded (or sought to respond) to these arguments. (Doc. No. 36 ¶ 16). Affidavits or declarations in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In order for inferences, thoughts, and opinions to be properly included in a Rule 56 affidavit or declaration, they must be premised on firsthand observations or personal experience, and established by specific facts. *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1355 n. 2 (6th Cir. 1996). In his declaration, Plaintiff provides no basis for having personal knowledge that no one else was interested or that this alleged fact was the basis for Defendant's decision not to implement the new shift. And aside from his own inadequate declaration, the only evidence that Plaintiff cites to support his assertion that no one else was interested is the deposition testimony of Harold Balthrop. (Doc. No. 29 at 6). The portion of Mr. Balthrop's deposition testimony cited by Plaintiff includes a statement that Defendant considered implementing the new shift, but does not include any discussion regarding the reasons the new shift was not implemented. (Doc. No. 23 at 69:18-71:16). Thus, this testimony does not suggest that the reason for Defendant's decision not to implement the new shift was that Plaintiff was the only employee interested in the new shift. Accordingly, the Court will not credit Defendant's assertion that this was in fact the reason.

To show that a non-protected employee is similarly-situated, a plaintiff must "prove that all of the relevant aspects of his employment situation were nearly identical to those of [the non-protected minority's] employment situation." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (internal quotation marks omitted) (alteration in original). The individuals whose treatment a plaintiff seeks to compare with his own must have dealt with the same supervisor, have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it. *Jackson v. FedEx Corp. Servs.*, *Inc.*, 518 F.3d 388, 393 (6th Cir. 2008) (citing *Mitchell*, 964 F.2d at 583). These factors should not be rigidly applied, but rather, the appropriate test is to look at those factors relevant to the factual context, as opposed to a requirement that a plaintiff demonstrate similarity in all respects. *Id.* at 394.

First, four of Plaintiff's comparators are African American.[7] (Doc. No. 23-2 at 52:20-24). As members of the applicable protected class, they cannot serve as comparators to support Plaintiff's *prima facie* case. *See Zambetti v. Cuyahoga Community Coll.*, 314 F.3d 249, 255 (6th Cir. 2002) (rephrasing the fourth prong to require the plaintiff to show that the "employer treated differently employees who were similarly-situated, but not members of the protected group") (internal quotation marks omitted) (alterations in the original).

In regards to the remaining Caucasian comparators (Mr. Cobb, Mr. Hogg, Mr. Bryant, and Mr. Freylundand), Plaintiff argues only that these employees were less qualified than Plaintiff and advances no evidence from which a reasonable jury could conclude that these comparators were similarly-situated to him. (Doc. No. 29 at 12-13). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary

---

[7] Mr. McKinnon, Mr. Tate, Mr. Trimble, and Mr. Holt are African American.

judgment." *Williamson v. Aetna Life Ins. Co.*, 481 F. 3d 369, 379 (6th Cir. 2007). The Court recognizes that the *prima facie* showing requirement is not onerous, but, the plaintiff still has the "burden of producing enough evidence to permit the trier of fact to infer the fact at issue." *Jackson*, 518 F.3d at 396 (quoting *Texas Dept. of Cmty. Aff. v. Burdine*, 450 U.S. 248, 254 n.7 (1981)). Simply arguing that these comparators were less qualified does not meet Plaintiff's burden at the summary judgment stage.[8]

Accordingly, as Plaintiff this denial cannot be used to support Plaintiff's *prima facie* case of race discrimination.

## B. PLAINTIFF FAILS TO CREATE A JURY ISSUE AS TO PRETEXT

Even assuming *arguendo* that Plaintiff has made a *prima facie* case for racial discrimination, he fails to establish pretext, as required in light of *McDonnell Douglas*. 411 U.S. at 802-05.

A defendant's burden in asserting a legitimate non-discriminatory reason is merely one of production, not persuasion, and it is not a court's job to make a credibility assessment at this stage. *See Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585-86 (6th Cir. 2009) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). Here, Defendant asserts the following legitimate non-discriminatory reasons for the respective above mentioned employment actions: (1) Plaintiff's promotion to Water Maintenance Leader 2 was delayed due to a hiring freeze and a review that could potentially lead to a possible reorganization; (2) the new shift was not implemented due to a business decision to require first shift to stay longer to cover calls, rather than implement an

---

[8] Defendant, on the other hand, produced extensive evidence that these comparators were not similarly-situated. Mr. McKinnon, Mr. Tate, and Mr. Cobb all worked in the Repair and Maintenance division and had all "come up through the trenches," while Plaintiff had not. (Doc. No. 23-2 at 38:9-19). Moreover, when Mr. Clark offered Plaintiff the opportunity to work in the Repair and Maintenance division, he declined. (*Id.*). Further, Mr. Freylundand worked under a different supervisor, worked night shift "from the start of his hiring," and worked in the Construction and Repair division his entire career. (*Id.* at 45:24; Doc. No. 23-4 at 13-14; Doc. No. 23 at 77:6-11).

entire new shift; (3) Plaintiff was not placed in the out-of-class supervisor roles because of Defendant's safety concerns arising from Plaintiff's lack of construction experience combined with the reality he would be supervising construction activities in these roles; and (4) Plaintiff was not promoted to Water Maintenance Supervisor in May 2016 because he ranked eighth on the eligibility list, with all the candidates having been scored and ranked by Metro's Main Human Resources Department, and not by any individuals associated with Metro Water Services. (Doc. No. 24 at 3, 7, 9, 11, 13, 16). These explanations constitute facially legitimate reasons for the above complained of employment actions.

The burden thus shifts back to Plaintiff, who must introduce evidence showing the proffered reason is pretext for race discrimination. *See Martin*, 548 F.3d at 411-12. Although Plaintiff disputes Defendant's proffered legitimate non-discriminatory reasons, he does not respond to the reality that over half of Plaintiff's comparators who allegedly received more favorable treatment were African American, an undisputed fact that critically diminishes his pretext claim. *See Wilson v. Ford Motor Co.*, 513 F. App'x 585, 591 (6th Cir. 2013) (noting that where the employment action affects both protected and non-protected employees, the pretext claim is critically diminished) (citing *Kelley v. Goodyear Tire & Rubber Co.*, 220 F.3d 1174, 1179 (10th Cir. 2000)). It is Plaintiff's burden to proffer sufficient evidence that could lead a reasonable jury to find that Plaintiff's race was the real reason for the adverse employment actions. *See Douglas v. Eaton Corp.*, 577 F. App'x 520, 524 (6th Cir. 2014) (citing *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 545 (6th Cir. 2008)) ("[The plaintiff] bears the ultimate burden of producing sufficient evidence from which a jury could reasonably reject the defendant's explanation and infer that it intentionally discriminated against [the plaintiff]."); *Nicholson v. City of Clarksville*, No. 3:11-CV-0355, 2012 WL 4026051, at *10 (M.D. Tenn. Sept. 12, 2012), *aff'd*

*sub nom. Nicholson v. City of Clarksville, Tenn.*, 530 F. App'x 434 (6th Cir. 2013) ("Even if a reasonable jury could conclude from this evidence that the defendant's proffered explanation for not promoting the plaintiff should be rejected, the plaintiff has nevertheless failed to adduce evidence showing that the defendant's action was motivated by racial animus.") (citing *Upshaw*, 576 F.3d at 587). Accordingly, a reasonable jury could not conclude based on the current record that Defendant's legitimate non-discriminatory reasons are pretext for intentional racial discrimination.

In sum, Plaintiff failed to meet his summary judgment burden because he did not provide sufficient evidence to establish a *prima facie* claim of discrimination. Further, a reasonable jury could not conclude that Defendant's legitimate non-discriminatory reasons are pretext for racial discrimination. Therefore, Plaintiff's Title VII claim for racial discrimination will be DISMISSED with prejudice.

## II.     RETALIATION IN VIOLATION OF TITLE VII

Title VII prohibits discriminating against an employee because that employee has engaged in conduct protected by Title VII. *See* 42 U.S.C. § 2000e–3(a). As with a Title VII discrimination claim, a Title VII retaliation claim can be established "either by introducing direct evidence of retaliation or by proffering circumstantial evidence that would support an inference of retaliation." *Imwalle*, 515 F.3d at 538. Here, Plaintiff has done the latter. Therefore, the Court analyzes Plaintiff's retaliation claim under the same burden-shifting framework of *McDonnell Douglas* discussed above. *See McDonnell Douglas Corp.*, 411 U.S. at 802-05.

First, it is Plaintiff's burden to provide evidence of his *prima facie* case by a preponderance of the evidence. The elements of a retaliation claim are similar to, but distinct from, those of a discrimination claim. To establish a *prima facie* case of retaliation under Title VII, Plaintiff must

demonstrate that: "(1) he engaged in activity protected by Title VII; (2) his exercise of such protected activity was known by the defendant; (3) thereafter, the defendant took an action that was "materially adverse" to the plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Jones v. Johanns*, 264 F. App'x 463, 466 (6th Cir. 2007) (citing *Abbott v. Crown Motor Co., Inc.*, 348 F.3d 537, 542 (6th Cir. 2003), and *Burlington N. & S.F.R. Co. v. White*, 548 U.S. 53, 67-68 (2006) (modifying the third element of a discrimination claim to require a "materially adverse action" rather than an "adverse employment action")). Unlike Title VII discrimination claims, Title VII retaliation claims "must be proved according to traditional principles of but-for causation," which "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 570 U.S. at 360. In other words, Plaintiff must show that he would have received one of his desired promotions sooner,[9] the new shift would have been implemented, and he would have received out-of-class supervisor work, but-for his participation in the *Grant I* lawsuit.

## A. PLAINTIFF ESTABLISHES A *PRIMA FACIE* CASE

Plaintiff contends that the above described employment actions constitute retaliation for engaging in protected activity.[10] Defendant concedes that Chief Judge Crenshaw previously held that the *Grant* I plaintiffs may rely upon their participation in *Grant* I as an on-going protected activity during the time frame that the case was open; thus, Defendant does not dispute that Plaintiff can prove the first two elements of his retaliation claim. (Doc. No. 24 at 14). Defendant also does

---

[9] As noted, Plaintiff eventually was promoted, in sequence, to each of the two positions to which he sought promotion.

[10] (1) delaying Plaintiff's promotion to a Water Maintenance Leader 2 position; (2) refusal to place Plaintiff in out-of-class supervisor roles; (3) refusal to implement a new shift that Plaintiff expressed interested in working; (4) informing a supervisor to work Plaintiff as a laborer; and (5) delaying Plaintiff's promotion to a Water Maintenance Supervisor position. (Doc. No. 1 ¶¶ 15-25).

not dispute that Plaintiff can prove the third element, except with respect to for the claim involving the implementation of the new 10:00 a.m. to 8:00 p.m. shift. (Doc. No. 23 at 14-15). Therefore, Defendant moves for summary judgment based on the fourth element of Plaintiff's *prima facie* claim of retaliation, *i.e.*, causal connection. (Doc. No. 24 at 15).

First, Defendant argues Plaintiff cannot demonstrate any casual connection between the *Grant* I class action lawsuit and certain of the aforementioned adverse actions, *i.e.*, ones that affected "everyone across the board . . . regardless of being named as a plaintiff in the *Grant* I lawsuit." (Doc. No. 24 at 15). The Court agrees. It is undisputed that the decision to not implement the new shift and the delay in promotions to Water Maintenance Leader 2 due to a hiring freeze affected all employees across the board, not only Plaintiff. Accordingly, Plaintiff has failed "to proffer evidence sufficient to raise the inference that [his] protected activity was the likely reason for the adverse action." *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000). *See also Porter v. Five Star Quality Care-MI, LLC*, 26 F. Supp. 3d 694, 707 (E.D. Mich. 2014) (rejecting retaliation claim where the adverse action "affected all employees . . . and not just those who exercised rights protected under the FMLA."); *Chin–McKenzie v. Continuum Health Partners*, 876 F. Supp. 2d 270, 287–88 (S.D.N.Y. 2012) (rejecting retaliation claim where action affected all employees and "there is no evidence that this action was directed specifically at [the plaintiff]"). Therefore, the Court agrees that the two specific above mentioned adverse actions cannot be used to support Plaintiff's retaliation claim.[11]

---

[11] Plaintiff appears to imply that Defendant's decision to not implement the new shift was retaliatory because he was the "only one who expressed interest" in working the new shift. (Doc. No. 29 at 19; Doc. No. 29-1 ¶ 12). As discussed above in footnote 6, Plaintiff has not made a sufficient evidentiary showing as to the proposition that Defendant decided to not implement the new shift because Plaintiff was the only employee expressing interest in the position. Further, the fact that Plaintiff was told he would be assigned a laborer position if he chose to work the new shift is not a materially adverse employment action, because Plaintiff never actually worked as a laborer given that the shift was never implemented. *See Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1121 (7th Cir. 2009) (discussion of a suspension that was never actually served was not a materially adverse action).

As to Plaintiff's remaining proffered adverse actions, Defendant argues Plaintiff failed to meet his burden to demonstrate a causal connection because some of the beneficiaries of the alleged retaliatory events—persons who received supervisory positions Plaintiff sought—were fellow *Grant* I class members. (Doc. No. 24 at 15). Defendant relies on *Grant* II, where Chief Judge Crenshaw held that the plaintiff's retaliation claim could not survive because the beneficiary of which the plaintiff complained "was herself part of its very same protected activity." *Grant, et al. v. Metro. Govt. of Nashville and Davidson Cty, Tennessee*, No. 3:16-cv-00714, Memo. Op. at 10 (M.D. Tenn. March 20, 2018) (hereinafter "*Grant* II"). In *Grant* II, the court explained that "[the plaintiff], must show that the awarding of the job to [a co-worker] over him would not have occurred in the absence of [the co-worker's] participation in the [*Grant* I lawsuit]." *Id*. (alterations in the original). The court eventually held "[i]t is not possible for [the plaintiff] to demonstrate that the [the *Grant* I lawsuit] was the but-for cause of the retaliatory event when [the co-worker]—the alleged [beneficiary] of the retaliatory event—was herself part of its very same protected activity." *Id*. (alterations in the original). The court reasoned that "no reasonable jury could find that [the defendant] retaliated against [the plaintiff] in response for the [*Grant* I lawsuit] by selecting a fellow class member from that same lawsuit for the open position." *Id*. (*alterations in the original*). Defendant argues that for this very same reason, Plaintiff likewise cannot prove a causal connection, because over half of the employees who received a promotion to Water Maintenance Supervisor and were placed in out-of-class supervisor positions were members of the protected class of *Grant* I.[12]

---

[12] The class members in *Grant* I are defined as "all former, current, and future African American employees" of Metro Water Services (as discussed in *Grant* II, Memo. Op., fn. 4; *see also* Doc. No. 29 at 2).

Plaintiff does not attempt to distinguish the present case from the court's reasoning in *Grant* II. *See generally* Doc. No. 29. Nevertheless, the Court finds *Grant* II distinguishable. First, multiple employees (including Caucasian employees) not engaged in protected activity were placed in out-of-class supervisor roles and promoted over Plaintiff. On the other hand, in *Grant* II, the evidence revealed only one employee who was treated more favorably, and this employee was also African American. Furthermore, although the level of participation of the beneficiary in *Grant* I is unclear, the Court finds it significant that Plaintiff is a named plaintiff in *Grant* I, while his African American comparators are simply unnamed class members. Thus, a reasonable fact finder could find that Defendant had a greater incentive to retaliate against Plaintiff than to retaliate against those comparators.

Accordingly, the Court holds that Plaintiff has met his burden of establishing a *prima facie* case of retaliation as to his delayed promotion to Water Maintenance Supervisor and lack of placement in out-of-class supervisor work. Plaintiff adduced evidence that he was "next-in-line" for the Water Maintenance Supervisor position, but he was told there was not a position available. Yet, a Caucasian co-worker still performed out-of-class work in a Water Maintenance Supervisor position. (Doc. No. 22-4 at 46:17-24; Doc. No. 29-1 ¶ 10). Further, Plaintiff also proffered evidence—which the Court does not discredit at this stage—that Defendant informed a supervisor to work Plaintiff as a laborer to "make life more difficult for him."[13] (Doc. No. 29-1 ¶ 6).

---

[13] Defendant objects to Plaintiff's overreliance on his own declaration and his failure to cite support from additional evidence uncovered in discovery as to this fact, and to his testimony regarding his construction experience discussed below. (Doc. No. 36 at 1). Plaintiff's statements as to these points, unlike his statements as to Defendant's business decision to not implement the new shift discussed above, are well within the boundaries of materials appropriate for establishing a dispute of material fact for the purpose of summary judgment as these statements are based on first hand observations and personal knowledge. *See Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 538 (4th Cir. 2015), *as amended* (June 24, 2015) ("[On summary judgment, the] court may consider materials that would themselves be admissible at trial, and the content or substance of otherwise inadmissible materials where the 'the party submitting the evidence show[s] that it will be possible to put the information . . . into an admissible form.'" quoting 11 James Wm. Moore, et al., *Moore's Federal Practice* § 56.91[2] (3d ed. 2015))). Plaintiff may testify on workplace matters that he personally experienced or observed, and that testimony is sufficient here to create

Additionally, Plaintiff was never placed in an out-of-class supervisor role prior to initiating this lawsuit, despite being qualified for a supervisor role and making numerous requests to be placed in such a role. (*Id.* ¶¶ 5, 6, 9). These facts, when viewed in the light most favorable to Plaintiff, could lead a reasonable jury to infer a causal connection between Plaintiff's protected activity and the adverse actions. *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001) ("A plaintiff's burden in establishing a *prima facie* case [of retaliation] is not meant to be an onerous one . . . .").

Therefore, Plaintiff has met his burden at summary judgment by presenting sufficient evidence to establish a *prima facie* claim of retaliation.

### B. PLAINTIFF CREATES A JURY QUESTION AS TO PRETEXT

In disputing Plaintiff's claims of retaliation, Defendant raises the same legitimate non-discriminatory reasons for its employment decisions that it raised in disputing Plaintiff's claim of racial discrimination. (Doc. No. 24 at 16). Specifically, Defendant asserts Plaintiff was not promoted to Water Maintenance Supervisor in May 2016 because he ranked eighth on the eligibility list, with all the candidates having been scored and ranked by "Main" Human Resources, and not any individual associated with Metro Water Services. (Doc. No. 24 at 11). Additionally, Defendant contends Plaintiff was not placed in the out-of-class supervisor roles due to safety concerns based on Plaintiff supervising construction activities with a lack of construction experience. (Doc. No. 24 at 7, 13). *See Upshaw*, 576 F.3d at 585-56 (explaining a defendant's burden in asserting a legitimate non-discriminatory reason is "merely one of production, not of persuasion, and it does not involve a credibility assessment.") (citing *Reeves*, 530 U.S. at 142).

---

a fact issue for trial. The lack of corroboration goes to his declaration's ultimate weight, not its sufficiency under Rule 56.

Because Defendant has proffered legitimate reasons for its actions, the burden shifts back to Plaintiff "to demonstrate that [Defendant's] proffered reasons were actually a pretext to hide unlawful retaliation." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007), *cert. denied*, 552 U.S. 1258 (2008). "To meet [his or her] burden on pretext, the plaintiff must produce evidence sufficient that a reasonable finder of fact could reject the employer's proffered reason." *Id.* (quoting *Haughton v. Orchid Automation*, 206 F. App'x 524, 531 (6th Cir. 2006)). Pretext can be demonstrated three ways: "by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Id.* (quoting *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 434 (6th Cir. 2002)).

In discussing his retaliation claim, Plaintiff fails respond to Defendant's proffered legitimate non-discriminatory reasons. However, as Defendant's proffered legitimate non-discriminatory reasons are the same reasons propounded in relation to the racial discrimination claim, the Court will construe Plaintiff's pretext arguments in relation to his discrimination claim as also applying to his retaliation claim. The Court finds that a reasonable jury could find that each of Plaintiff's proffered reasons either (1) has no basis in fact or (2) did not motivate the Defendant's conduct. First, Plaintiff's level of construction experience is a disputed fact. (Doc. No. 29-1 ¶ 3). Moreover, Plaintiff's supervisor was not aware of Plaintiff's Caucasian comparators' level of experience, indicating that experience level may have not been the reason Plaintiff was not chosen for the out-of-class work. (Doc. No. 23-2 at 45:19-21). Second, Defendant informed Plaintiff that there were no more Water Maintenance Supervisor positions, but allowed a Caucasian comparator to perform out-of-class work as an open Water Maintenance Supervisor during third shift. (Doc. No. 29-1 ¶ 10; Doc. No. 22-4 at 46:17-24). Viewing these facts most favorably to Plaintiff, as the

Court must do at the summary judgment stage, the Court concludes that Plaintiff's evidence creates a jury question as to whether Defendant's proffered legitimate reasons for the adverse actions were pretext for discrimination.

As to two of the alleged adverse actions, Plaintiff has met his burden and provided evidence of his *prima facie* case of retaliation at the summary judgment stage. Additionally, Plaintiff's evidence reveals a jury question as to whether Defendant's proffered reasons were pretext for discrimination. Accordingly, Defendant's Motion for Summary Judgment as to the retaliation claim will be DENIED, although the Court will enter an Order in Defendant's favor, under Rule 56(g), with respect to the alleged adverse actions of delayed promotion to Water Maintenance Leader 2 and non-implementation of the new shift.[14]

## III. DISCRIMINATION AND RETALIATION IN VIOLATION OF THE THRA

Defendant also moves for summary judgment on Plaintiff's THRA discrimination and retaliation claims. Defendant argues that these claims are time-barred because this lawsuit was not filed until August 2, 2017, and the claims arose before August 2, 2016. (*See* Doc. No. 16 fn. 9 (citing Tenn. Code Ann. § 4-21-311(d) (one-year statute of limitations))). Plaintiff does not discuss his THRA claims at all in his response; therefore, he has abandoned these claims. *See Grant* II, Memo. Op at 5 (treating the plaintiff's THRA claims as abandoned where the plaintiff "generally fails to discuss the THRA at all.") (citing *Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("[A] plaintiff is deemed to have abandoned a claim when [he] fails to address it in response to a motion for summary judgment.") (alterations in the original) (citations omitted). Accordingly, the Court will treat Plaintiff's THRA claims as abandoned.

---

[14] "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damage or other relief—that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g).

Furthermore, "[t]he analysis of claims brought pursuant to the THRA is identical to the analysis used for Title VII claims." *Bailey v. USF Holland, Inc.*, 526 F.3d 880, 885 n.1 (6th Cir. 2008). Plaintiff's racial discrimination claim brought pursuant to THRA also fails for the reasons described above. Therefore, the Court will grant Defendant summary judgment on Plaintiff's THRA claims.

## CONCLUSION

For the foregoing reasons, the Court will **DENY** in part and **GRANT** in part Defendant's Motion for Summary Judgment (Doc. No. 25). The Court will **GRANT** Defendant's motion with respect to Plaintiff's Title VII racial discrimination claim and THRA claims. The Court will **DENY** Defendant's motion with respect to Plaintiff's Title VII retaliation claim. However, as discussed herein, the Court will find that there is no genuine issue of material fact as to whether Defendant retaliated against Plaintiff by delaying Plaintiff's promotion to Water Maintenance Supervisor 2 and that it is established Defendant did not retaliate against Plaintiff through its decision to not implement the new shift.

An appropriate order will be entered.


*Eli Richardson*
_____
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE